NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

DARRIN BIVINS,                    :
                                  :    Civil Action No. 04-4673 (GEB)
            Petitioner,           :
                                  :
        v.                        :    **OPINION**
                                  :
LYDELL B. SHERRER, et al.,        :
                                  :          RECEIVED
            Respondents.          :
                                         JUN 2 2 2006

                                       AT 8:30 _____ [])
                                         WILLIAM T. WALSH
                                              CLERK
**APPEARANCES:**
                                    Counsel for Respondents
Petitioner pro se                   Gary A. Thomas, Esq.
Darrin Bivins                       Ofc. of Essex Co. Prosecutor
Northern State Prison               Essex Co. Courts Building
168 Frontage Road                   Newark, NJ 07102
P.O. Box 2300
Newark, NJ 07114


**BROWN, JR.**, Chief Judge

     Petitioner Darrin Bivins, a prisoner currently confined at

Northern State Prison in Newark, New Jersey, has submitted a

petition for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254.  The respondents are Lydell B. Sherrer and the Attorney

General of New Jersey.

     For the reasons stated herein, the Petition must be denied.

## I.  BACKGROUND

### A.  Factual Background

The relevant facts are set forth in the opinion of the
Superior Court of New Jersey, Law Division, Essex County, on
Petitioner's first state-court motion for post-conviction
relief.[1]

> This case arises from the January 18, 1991 robbery
> of Sidney Walters by two men near the corner of South
> Orange Avenue & South 9th Street in Newark.  The
> incident was witnessed by Edna Smith, an acquaintance
> of the victim.  She provided the police with a general
> description of the assailants and advised the
> investigating officers that the shooter was known on
> the streets as "Farad" and "Malik."  However, she was
> unable to identify either assailant after viewing books
> of photographs provided by the police.
>
> Nonetheless, within a few weeks of the shooting,
> Ms. Smith saw the defendant on the street and followed
> him to his girlfriend's apartment.  Ms. Smith then
> called the police who subsequently retrieved Mr. Bivens
> from those premises.  It is unclear if defendant was
> then identified by Ms. Smith and subsequently arrested,
> or if he had been arrested on outstanding warrants
> before he was identified by that witness.
>
> The arresting officer, Michael Thomas, testified
> at the time of trial.  He specifically stated that the
> defendant's girlfriend, Blanche Stevenson, allowed him
> to enter the subject apartment.  Additionally, he
> testified that the defendant was in his plain view when
> Ms. Stevenson opened the apartment door.  This officer
> testified that there were open charges against the

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding
instituted by an application for a writ of habeas corpus by a
person in custody pursuant to the judgment of a State court, a
determination of a factual issue made by a State court shall be
presumed to be correct.  The applicant shall have the burden of
rebutting the presumption of correctness by clear and convincing
evidence."

defendant at the time of arrest.  In spite of the
officer's testimony, Ms. Stevenson testified that the
arresting officers did not have her consent to enter
the apartment, but rather, pushed in her door, seized
the defendant and then "tore up" her home.

Regardless of the issues surrounding the
defendant's arrest, it is clear that <u>both</u> the <u>victim</u>,
Sidney Walters, and <u>Ms. Smith</u> made in-court
identifications of defendant as one of the perpetrators
of this crime.

(Respondents' Exhibit 10 at 1-2 (citations to trial record

omitted) (emphasis in original).)

B.   <u>Procedural History</u>

Pursuant to a jury trial, Petitioner was found guilty of

first-degree robbery, N.J.S.A. 2C:15-1, (Count One); second-

degree aggravated assault, N.J.S.A. 2C:12-1b(1), (Count Two);

third-degree possession of a handgun without a permit, N.J.S.A.

2C:39-5b, (Count Three), and second-degree possession of a

handgun for an unlawful purpose, N.J.S.A. 2C:39-4a, (Count Four).

On Count One, Petitioner was sentenced to a mandatory extended

term of life with 25 years of parole ineligibility.  The

sentences on all other counts were made to run concurrently.  The

judgment of conviction was entered December 16, 1991.  (RE2.)

On direct appeal, the Superior Court of New Jersey,

Appellate Division, affirmed.  (RE5.)

On April 26, 1993, Petitioner filed his first motion for

post-conviction relief.  By letter opinion and order entered June

30, 1995, the PCR court denied relief.  (RE9; RE10.)  The

Appellate Division affirmed the denial of relief and, on March 16, 1998, the Supreme Court of New Jersey denied certification. (RE14; RE17.)

On April 27, 1998, Petitioner filed in the trial court a second motion for post-conviction relief. On October 1, 1998, the trial court entered an order that the motion was withdrawn by Petitioner. Apparently, Petitioner attempted to re-file his withdrawn motion. The trial court never acted on the re-filed motion. By order of the Appellate Division, the re-filed motion was deemed filed nunc pro tunc as of November 13, 1998. (RE20.) On March 27, 2003, the PCR court denied relief. (RE22 at RA24.) The Appellate Division affirmed the denial of relief and, by order entered June 17, 2004, the Supreme Court of New Jersey denied certification. (RE23; RE26.) This Petition followed.

## II.  28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

4

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determinated by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II).  A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context

5

where it should apply," (although the Supreme Court expressly declined to decide the latter). Id. at 407-09.  To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Id. at 409.  In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference.  Chadwick v. Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)).  With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment.  See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).  See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent."  Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v.

Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19
(2002)).

Although a petition for writ of habeas corpus may not be
granted if the Petitioner has failed to exhaust his remedies in
state court, a petition may be denied on the merits
notwithstanding the petitioner's failure to exhaust his state
court remedies.  See 28 U.S.C. § 2254(b)(2); Lambert v.
Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v.
Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

Finally, a pro se pleading is held to less stringent
standards than more formal pleadings drafted by lawyers.  Estelle
v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S.
519, 520 (1972).  A pro se habeas petition and any supporting
submissions must be construed liberally and with a measure of
tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998);
Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989);
United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969),
cert. denied, 399 U.S. 912 (1970).]

### III.   ANALYSIS

A.   "Brady" Violation

Petitioner contends that the prosecutor violated his
constitutional obligation to produce crime scene photographs,
prior statements of Edna Smith and Sidney Walters, and the full
name and address of another alleged eyewitness listed in a police

7

report only as "Schwartz." This is a claim that the prosecutor violated his constitutional obligation to produce exculpatory evidence to the defense.

The prosecution in a criminal matter has a constitutional obligation to disclose exculpatory evidence to the defendant. See Brady v. Maryland, 373 U.S. 83 (1967); Giglio v. United States, 405 U.S. 150, 154 (1972) ("A finding of materiality of the evidence is required under Brady."). Exculpatory evidence is considered material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Strickler v. Greene, 527 U.S. 263, 280 (1999) (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)). Nondisclosure merits relief only if the prosecution's failure "'undermines confidence in the outcome of the trial.'" Kyles v. Whitly, 514 U.S. 419, 434 91995) (quoting Bagley, 473 U.S. at 678).

The PCR court found this claim both procedurally barred and meritless.

> [Rule] 3:22 contains certain procedural bars to a petition for post-conviction relief. Essentially, these rules are in place to promote our courts' strong interest in achieving finality. State v. Mitchell, 126 N.J. at 584, supra. R. 3:22-3 expresses the principle that post-conviction relief is neither a substitute for appeal nor for a motion incident to the proceedings in the trial court. ... R. 3:22-4 provides that any ground for relief not raised in a prior proceeding will be barred unless:

8

(a)   The ground for relief not previously
asserted could not reasonably have been
raised in any prior proceeding;

(b)   The enforcement of the bar would result
in fundamental injustice; or

(c)   The denial of the relief would be
contrary to the Constitution of the
United States or the State of New
Jersey.

. . .

R. 3:22-12 provides: "A petition to correct an
illegal sentence may be made at any time.  No other
petition shall be filed pursuant to this rule more than
5 years after rendition of the judgment or sentence
sought to be attacked unless it alleges facts showing
that the delay beyond said time was due to defendant's
excusable neglect."

In this case, it is clear that petitioner's most
recent petition for post-conviction relief was filed
well beyond five years following the December 20, 1991
judgment of conviction.  However, courts sometimes
relax this 5-year limitation.  In State v. Afandor, 151
N.J. 41, 52 (1997), the court explained that this
relaxation ought to occur only where "exceptional
circumstances" exist.  To make this determination,
judges should "consider the extent and cause of the
delay, the prejudice to the State, and the importance
of the petitioner's claim in determining whether there
has been an 'injustice' sufficient to relax the time
limits." (Citing State v. Mitchell, 126 N.J. 565, 580
(1992)).  Moreover, "absent compelling, extenuating
circumstances, the burden to justify filing a petition
after the five-year period will increase with the
extent of the delay, for as time passes, justice
becomes more elusive and the necessity for preserving
finality and certainty of judgments increases." Id.

. . .

Regarding the claim of prosecutorial misconduct,
no evidence or any factual explanation is offered as to
why this claim is being made.  Furthermore, this issue
was not raised at trial nor was it raised on appeal or

> in the first petition for post-conviction relief and
> therefore, it is barred from consideration by the
> court.  Moreover, petitioner's several allegations of
> misconduct are lacking in factual support and
> conclusory.  Based on a review of the record, the claim
> of prosecutorial misconduct is wholly frivolous.
>
> As such, given the fact that these arguments have
> already been raised and rejected, or in the
> alternative, are wholly frivolous, it is clear that
> petitioner has not shown "excusable neglect" in not
> filing this petition within five years of final
> judgment.  R. 3:22-12.  Therefore, pursuant to R. 3:22-
> 12, the claims are both time barred and devoid of
> merit.

(RE22 at RA28-31 (emphasis in original).)  The Appellate Division

affirmed the denial of relief for the reasons stated by the PCR

court.  (RE23.)

> A procedural default occurs when a prisoner's federal
> claim is barred from consideration in the state courts
> by an "independent and adequate" state procedural rule.
> See, e.g., Doctor[ v. Walters, 96 F.3d 675, 683 (3d
> Cir. 1996)].  Federal courts may not consider the
> merits of a procedurally defaulted claim unless the
> applicant establishes "cause" to excuse the default and
> actual "prejudice" as a result of the alleged violation
> of the federal law or unless the applicant demonstrates
> that failure to consider the claim will result in a
> fundamental "miscarriage of justice."  Coleman v.
> Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115
> L.Ed.2d 640 (1991).

Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002).

On habeas review of state prisoner claims, a federal court

"will presume that there is no independent and adequate state

ground for a state court decision when the decision 'fairly

appears to rest primarily on federal law, or to be interwoven

with the federal law, and when the adequacy and independence of

10

any possible state law ground is not clear from the face of the opinion.'" Coleman, 501 U.S. at 734-35 (quoting Michigan v. Long, 463 U.S. 1032, 1040-41 (1983)).[2]  Only a "firmly established and regularly followed state practice" is adequate to prevent subsequent habeas review in federal court. James v. Kentucky, 466 U.S. 341, 348-351 (1984). See also Lee v. Kemna, 534 U.S. 362, 376 (2002) ("Ordinarily, violation of 'firmly established and regularly followed' state rules ... will be adequate to foreclose review of a federal claim." (citations omitted)). Generally speaking, "[a] state court's refusal to address a prisoner's federal claims because he has not met a state procedural requirement is both independent and adequate." Cabrera v. Barbo, 175 F.3d 307, 312 (3d Cir. 1999) (citations omitted).

The "cause" standard requires a petitioner to show that some objective factor external to the defense impeded his efforts to comply with the state procedural rule. See Coleman, 501 U.S. at 752 (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)). In the absence of a Sixth Amendment violation, the petitioner bears the risk in federal habeas for all attorney errors made in the course of the representation. Coleman, 501 U.S. at 754. Neither a pro

---

[2] A state court's reliance on a procedural bar as an alternate holding is sufficient to trigger the "cause" and "prejudice" test. See United States ex rel. Caruso v. Zelinsky, 689 F.2d 435, 440 (3d Cir. 1982).

se prisoner's ignorance of the procedural rule nor inadvertence satisfies the cause standard. <u>Murray</u> at 485-87.  Failure of the state court to "bend the rules" for a pro se litigant is not cause.  <u>Caswell v. Ryan</u>, 953 F.2d 853, 862 (3d Cir. 1992).

To establish "prejudice," a petitioner must prove "'not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension.'"  <u>Murray v. Carrier</u>, 477 U.S. 478, 494 (1986) (quoting <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982)).  In the context of an ineffective assistance claim, the Court of Appeals for the Third Circuit has held that prejudice occurs where "there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different."  <u>Sistrunk v. Vaughn</u>, 96 F.3d 666, 670 (3d Cir. 1996).

In the alternative, in order to establish that failure to review an otherwise procedurally defaulted claim will result in a "miscarriage of justice," a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  <u>Carrier</u>, 477 U.S. at 496.  "Thus, to establish a miscarriage of justice, the petitioner must prove that it is more likely than not that no reasonable juror

12

would have convicted him." <u>Werts</u>, 228 F.3d at 193 (citing <u>Schlup</u> <u>v. Delo</u>, 513 U.S. 298, 326 (1995)).

Here, the State courts determined that Petitioner's <u>Brady</u> claims were time-barred under New Jersey Court Rule 3:22-12. Petitioner does not contend that the time-bar is anything but a "firmly established and regularly followed state practice," and State case law suggests that the rule is firmly established and regularly followed. <u>See</u>, <u>e.g.</u>, <u>State v. Dugan</u>, 289 N.J. Super. 15 (App. Div.), <u>certif. denied</u>, 145 N.J. 373 (1996); <u>State v. Dillard</u>, 208 N.J. Super. 722 (App. Div.), <u>certif. denied</u>, 105 N.J. 527 (1986). Thus, the State courts denied relief on an independent and adequate state ground, precluding review here of Petitioner's <u>Brady</u> claims unless he can meet the "cause" and "prejudice" standard or demonstrate that failure to consider the claim will result in a miscarriage of justice.

Petitioner has failed to allege any facts suggesting that he can meet the "cause" standard. With respect to the issue of "prejudice," Petitioner alleged in state court that he could have used the photographs to demonstrate that an iron fence obscured Ms. Smith's view of the offense conduct. Had that fact been material, it could have been brought to the attention of the jury by other means. Petitioner presents no other evidence of prejudice. Nor has he presented any evidence suggesting that failure to consider the claim will result in a miscarriage of

13

justice.  Accordingly, the claims of <u>Brady</u> violations are procedurally barred; this Court will not consider them. Petitioner is not entitled to relief on these claims.

B.    Ineffective Assistance of Counsel

Petitioner contends he was deprived of the effective assistance of counsel, in violation of the Sixth Amendment, on the following grounds: (1) counsel's failure to move to suppress all evidence seized pursuant to an unlawful arrest, which produced two sidewalk identifications, (2) counsel's failure to pursue the alleged <u>Brady</u> violations, (3) counsel's failure to object to the trial court's instruction on "reasonable doubt," and (4) counsel's failure to challenge the validity of prior convictions used to enhance Petitioner's sentence.

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI. The right to counsel is "the right to <u>effective</u> assistance of counsel."  <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970) (emphasis added).

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that his counsel's performance fell below an objective standard of reasonable professional assistance and that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been

14

different.  Strickland v. Washington, 466 U.S. 668, 687, 694
(1984).  A "reasonable probability" is "a probability sufficient
to undermine confidence in the outcome."  Strickland at 694.
Counsel's errors must have been "so serious as to deprive the
defendant of a fair trial, a trial whose result is reliable."
Id. at 687.  "When a defendant challenges a conviction, the
question is whether there is a reasonable probability that,
absent the errors, the factfinder would have had a reasonable
doubt respecting guilt."  Id. at 695.

    The performance and prejudice prongs of Strickland may be
addressed in either order, and "[i]f it is easier to dispose of
an ineffectiveness claim on the ground of lack of sufficient
prejudice ... that course should be followed."  Id. at 697.

    There is "a strong presumption that counsel's conduct falls
within the wide range of reasonable professional assistance."
Strickland, 466 U.S. at 689.  As a general matter, strategic
choices made by counsel after a thorough investigation of the
facts and law are "virtually unchallengeable," though strategic
choices "made after less than complete investigation are
reasonable precisely to the extent that reasonable professional
judgments support the limitations on investigation."  Id. at 690-
91.  If counsel has been deficient in any way, however, the
habeas court must determine whether the cumulative effect of
counsel's errors prejudiced the defendant within the meaning of

15

Strickland.   See Berryman v. Morton, 100 F.3d 1089, 1101-02 (3d
Cir. 1996).

   1.   Identification evidence

   The PCR court rejected Petitioner's claim that trial counsel
was ineffective for failing to move to suppress the evidence
seized pursuant to his arrest, including the sidewalk
identifications that followed.

> Essentially, this petition hinges upon a claim of
> ineffective assistance of counsel.  No doubt, there is
> a sixth amendment right to effective assistance of
> counsel at trial and on first appeal.  The issue here
> is whether this defendant was indeed denied effective
> counsel in this case.  In making this assessment, we
> must apply the two-part test which was developed by the
> United States Supreme Court in Strickland v.
> Washington, 466 U.S. 668 (1984) and adopted by our
> State's highest court in State v. Fritz, 105 N.J. 42
> (1987).  Under this test, defendant must:
>
>    (1)   Demonstrate that his attorney's
>          performance was deficient because it
>          fell below an objective standard of
>          reasonableness; and
>
>    (2)   Show that counsel's performance was so
>          deficient as to create a reasonable
>          probability that these deficiencies
>          materially contributed to his
>          conviction.

Id. at 58.

> Counsel for petitioner acknowledges this test.
> However, he argues that trial counsel's failure to move
> for suppression of the identification evidence was so
> egregious that prejudice (i.e., the second element of
> the Strickland - Fritz test) should be presumed.  This
> court does not agree.  The per se analysis advanced by
> petitioner is reserved for those instances where an
> attorney's performance is such a complete denial of

16

representation that prejudice may be presumed.  State v. Savage, 120 N.J. 594, 614-615 (1990). [fn3]

> [fn3.  This case lists examples of such per se violations as including attorney's failure to appear at a critical stage of the proceedings or actual conflict of interest.]

When evaluating whether counsel's performance was objectively unreasonable, there is a strong presumption that counsel's conduct fell within a wide range of reasonable assistance.  State v. Fritz, 105 N.J. at 52 (1987).  In this regard, the burden falls upon petitioner to provide this court with the tools which might enable it to evaluate the actions or inactions of trial counsel.  See, State v. Calloway, 275 N.J. Super. 13, 15 (App. Div. 1994) ("The defendant is obliged to provide the law division with the tools to enable it to fairly resolve the issues he has raised.") Accordingly, pursuant to this court's request for same, defendant has supplied this court with copies of the pretrial and trial transcripts.  These appear to indicate that trial counsel did not move to suppress any evidence or identification of Mr. Bivens on the specific grounds that they may have been the fruit of an illegal arrest. Rather, it appears that trial counsel focused his efforts on challenging the identification procedures of the police.

In order to be "effective" it is not necessary that counsel make every conceivable motion that could have been made on his client's behalf.  State v. Love, 233 N.J. Super. 38 (App. Div. 1989), certif. denied, 118 N.J. 188 (1989).  Moreover, the failure to raise unsuccessful legal arguments does not constitute ineffective assistance of counsel.  State v. Worlock, 117 N.J. 596, 625 (1990).  This point brings us to the second prong of the Strickland - Fritz test: whether the defense was prejudiced by trial counsel's failure to move for suppression of the identification evidence.

The exclusionary rule prohibits the introduction of evidence obtained in violation of a defendant's fourth amendment rights by an unreasonable seizure. Wong Sun v. United States, 371 U.S. 471 (1963). However, it is well settled that this rule has its exceptions.  State v. Hunt, 91 N.J. 338, 349 (1982). For instance, failure to obtain a warrant may not

bespeak a fourth amendment violation when there is a
consensual entry of a suspect's home.  Illinois v.
Rodriguez, 497 U.S. 177 91990).  Defendant has failed
to address this factor.  This court's independent
review of the trial transcripts indicates that there
was conflicting testimony offered on this point.  The
police claimed that they were given consent to enter
the premises, whereas Ms. Stevenson asserts that the
arresting officers forcibly entered her apartment.

In any event, even if consent to enter the subject
apartment is debatable, this court recognizes that the
exclusionary rule is inapplicable where the evidence at
issue has been obtained from an independent source.
State v. Delane, 207 N.J. Super. 45, 51 (1986)
(stressing that "the exclusionary rule must be
subjected to a common sense application").  In this
connection, defendant himself acknowledges that it was
the witness who followed him and led the police to his
girlfriend's apartment.  The sidewalk identification
followed, but was not the fruit, of the arrest.
Moreover, the in-court identification would not have
been rendered excludable, irrespective of the out-of-
court identification, since the witness had an
independent source for her in-court identification not
derived from the arrest (i.e., a reliable mental image
of the assailant).  State v. Davis, 204 N.J. Super.
181, 184-185 (App. Div. 1985), certif. denied, 104 N.J.
78 (1986) (citing U.S. v. Crews, 445 N.J. 465 (1980).

Given these facts, there is no indication that
defendant's case was prejudiced by trial counsel's
failure to move for suppression of the sidewalk
identification on the grounds that it was the fruit of
an illegal arrest.  Indeed at oral argument, defense
counsel referred to this decision as a strategic
tactical issue and conceded that trial counsel had
specific strategic reasons for approaching the issue
this way.  Accordingly, defendant has failed to present
a cognizable claim which might support relief, or for
that matter present a prima facie claim which might
require that this court hold an evidentiary hearing to
further explore the facts of this case.  See State v.
Preciose, 129 N.J. at 462-63 (1992).  The defense has
not requested that an evidentiary hearing be held, nor
has it identified any unresolved factual issues which
might reasonably support an argument under the
Strickland test.

In this connection, the defense has also failed to offer a convincing argument regarding trial counsel's failure to make a motion to suppress evidence seized as a result of defendant's arrest.  Moreover, the defense has failed to articulate what evidence was seized pursuant to defendant's arrest.  Indeed, it does not appear that there was any evidence seized incident to the arrest.

Defendant has likewise failed to advance a significant argument under his claim that the police employed improper identification procedures when they allowed Ms. Smith to peruse through photographic books instead of providing her with a "proper" photographic array.  Not only is this argument obscure, but it is also unsupported by any legal authority.  Nonetheless, it is evident that Ms. Smith's identification of Mr. Bivens as one of Walters' assailants did not generate from any photographic array provided by the police. Indeed Ms. Smith could not identify the suspect from any of the photos provided by the police.  Again, Ms. Smith's identification of defendant was clearly independent from police action and this court is convinced that any attempt to challenge the "photographic array" by trial counsel at trial would not have effected the verdict rendered.

... The dispute here is with trial counsel's strategy.  Based upon this court's review of the record, trial counsel's performance was clearly not deficient, only at variance with defendant's thinking regarding trial tactics and strategy.

Defendant's contention that he did not receive the effective assistance of trial and appellate counsel is entirely without merit.  The actions of both attorneys reflected sound trial and appellate strategy in the exercise of their professional judgment.  The claimed errors do not overcome the presumption that counsels' conduct was within the wide range of acceptable, reasonable, professional assistance, nor do they demonstrate prejudice to defendant sufficient to undermine confidence in the outcome of the trial or defendant's appeal.  Moreover, and of equal importance, thorough study of the record shows that defendant was provided a rigorous, viable defense and appeal; and that his counsels' performance were not unreasonable or inadequate.

> The trial and appellate attorneys were conscientious and zealous in the representation of the petitioner. The record does not support or even give rise to a fair inference that counsel's performance were in any way inadequate or below a level of reasonable competence.
>
> Finally, even assuming that trial counsel's performance could in some way be characterized as deficient, which I do not find, his conduct was not so deficient as to create a reasonable probability that those deficiencies materially contributed to defendant's conviction. <u>Strickland v. Washington</u>, 466 U.S. 668.

(RE10 at 7-11.)  The Appellate Division affirmed the denial of relief for the reasons stated by the PCR court.  (RE14.)  The determination of the state courts was neither contrary to nor an unreasonable application of governing federal law.  Petitioner is not entitled to relief on this claim.

### 2.   "Brady" violations

Petitioner contends that his counsel was ineffective because he either failed to file a motion to obtain discovery, or failed to follow up on the alleged <u>Brady</u> violation, to obtain evidence including Edna Smith's and Sidney Walter's statements to police, crime scene photographs, and the full disclosure of another witness referred to in police reports as "Schwartz."  This issue was raised in the second motion for post-conviction relief, (RE21), and was denied.  "In petitioner's most recent petition for post-conviction relief, he again challenges counsel's strategy and tactics rather than stating a viable claim

warranting relief." (RE22 at RA29.) The Appellate Division affirmed for the reasons stated by the PCR court. (RE23.)

As to the underlying issue, the alleged <u>Brady</u> violation, as noted <u>supra</u>, the PCR court found the claim meritless. Here, there is no suggestion that there is a reasonable probability that the outcome would have been different had the omitted evidence been presented. For example, the fact that an iron fence may have obstructed Ms. Smith's view could have been brought to the attention of the jury without the crime scene photographs. Petitioner is not entitled to relief on this claim.

3. <u>Instructions on "Reasonable Doubt"</u>

On direct appeal, Petitioner challenged the adequacy of the jury instruction on "reasonable doubt." It does not appear that this claim was raised in the context of a claim of ineffective assistance of counsel, as it is here. (RE3 at 21-24.) The charge in full was as follows:

> What do we mean by reasonable doubt. We have two crucial elements in this case. One is credibility and one is reasonable doubt. A reasonable doubt is not a doubt based on hunch or guesswork or speculation. A reasonable doubt is not a mere possible or imaginary doubt. Everything relating to what people say and do is open to some possible or imaginary doubt. <u>I think, as you heard, at least one counsel say and perhaps both, a reasonable doubt does not mean certainty. The only time we might be certain is if we ourselves were there. I would suggest to you even if we ourselves were there we might not be certain. Now, we are not talking about certainty.</u> A reasonable doubt, ladies and gentlemen, is an honest and reasonable uncertainty as to the guilt of the defendant existing in your minds only after you have given full and impartial

> consideration to all the evidence. A reasonable doubt
> may arise from the evidence itself or from a lack of
> evidence. It's a doubt which a reasonable thinking
> person has after carefully weighing all of the evidence
> and the testimony.

(4T92-93 (emphasis added).) Considering the charge as a whole,

the Appellate Division found no error requiring reversal. (RE5.)

Generally, a jury instruction that is inconsistent with

state law does not merit federal habeas relief. Where a federal

habeas petitioner challenges jury instructions given in a state

criminal proceeding,

> [t]he only question for us is "whether the ailing
> instruction by itself so infected the entire trial that
> the resulting conviction violates due process." It is
> well established that the instruction "may not be
> judged in artificial isolation," but must be considered
> in the context of the instructions as a whole and the
> trial record. In addition, in reviewing an ambiguous
> instruction ..., we inquire "whether there is a
> reasonable likelihood that the jury has applied the
> challenged instruction in a way" that violates the
> Constitution. And we also bear in mind our previous
> admonition that we "have defined the category of
> infractions that violate 'fundamental fairness' very
> narrowly." "Beyond the specific guarantees enumerated
> in the Bill of Rights, the Due Process Clause has
> limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations

omitted). Thus, the Due Process Clause is violated only where

"the erroneous instructions have operated to lift the burden of

proof on an essential element of an offense as defined by state

law." Smith v. Horn, 120 F.3d 400, 416 (1997). See also In re

Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause

protects the accused against conviction except upon proof beyond

a reasonable doubt of every fact necessary to constitute the
crime with which he is charged"); Sandstrom v. Montana, 442 U.S.
510, 523 (1979) (jury instructions that suggest a jury may
convict without proving each element of a crime beyond a
reasonable doubt violate the constitutional rights of the
accused).

In evaluating a challenged instruction,

> a single instruction to a jury may not be judged in
> artificial isolation, but must be viewed in the context
> of the overall charge.  If the charge as a whole is
> ambiguous, the question is whether there is a
> reasonable likelihood that the jury has applied the
> challenged instruction in a way that violates the
> Constitution.

Middleton v. McNeil, 541 U.S. 433, 437 (2004) (internal
quotations and citations omitted).

A jury instruction that "reduce[s] the level of proof
necessary for the Government to carry its burden [of proof beyond
a reasonable doubt] is plainly inconsistent with the
constitutionally rooted presumption of innocence." Cool v.
United States, 409 U.S. 100, 104 (1972).  "[T]rial courts must
avoid defining reasonable doubt so as to lead the jury to convict
on a lesser showing than due process requires." Victor v.
Nebraska, 511 U.S. 1, 22 (1994); see also Cage v. Louisiana, 498
U.S. 39, 41 (1990).  As the Supreme Court explained in Victor,

> so long as the court instructs the jury on the
> necessity that the defendant's guilt be proved beyond a
> reasonable doubt, the Constitution does not require
> that any particular form of words be used in advising

23

the jury of the government's burden of proof.  Rather,
taken as a whole, the instructions [must] correctly
conve[y] the concept of reasonable doubt to the jury.

Victor, 511 U.S. at 6 (citations and internal quotation marks
omitted).

"[A] misdescription of the burden of proof ... vitiates all
the jury's findings.  Sullivan v. Louisiana, 508 U.S. 275, 281
(1993) (emphasis in original).  Such an error is considered
structural and thus is not subject to harmless error review.  See
id. at 280-82.  But see Neder v. United States, 527 U.S. 1, 8-11
(1999) (applying harmless-error analysis where jury was not
instructed on an element of an offense).

The determination of the Appellate Division that the
challenged instruction did not unconstitutionally shift the
burden of proof is neither contrary to nor an unreasonable
application of governing federal law.  Here, the trial court
tailored the instruction on reasonable doubt in response to
comments made by both counsel in their closing arguments.  The
instruction did not permit conviction on less than proof beyond a
reasonable doubt.  As the instruction did not relieve the
government of its burden of proof, trial counsel could not have
been ineffective for failing to object to it.  Petitioner is not
entitled to relief on this claim.

24

### 4.   Validity of prior convictions

The trial court found that Petitioner qualified for an extended term both as a persistent offender and, mandatorily, as a second offender with a firearm under N.J.S.A. 2C:44-3a and d. (6T.)  Petitioner claims that his counsel provided ineffective assistance at sentencing because he failed to challenge the validity of the prior convictions used to enhance Petitioner's sentence.  Petitioner alleges that those prior convictions were unconstitutional because of defects in the plea process.

Petitioner unsuccessfully challenged the legality of his sentence on direct appeal and in his first and second motions for post-conviction relief.  It does not appear, however, that he ever raised the issue of the legality of the prior convictions used to impose an enhanced sentence.[3]  (RE3; RE6; RE21 at 51.)

Whether the convictions used to enhance Petitioner's sentence are subject to attack as illegal, Petitioner does not allege that any such conviction was reversed or otherwise invalidated at the time of his sentencing.  Without deciding whether any such conviction was illegal, it was not ineffective assistance to avoid challenging them at the sentencing.  Under New Jersey law, a trial court is required to impose a mandatory extended term at the time of initial sentencing, even if an

---

[3] Respondents do not assert that this claim is unexhausted. This Court will exercise its authority under 28 U.S.C. § 2254(b)(2) to deny this claim on the merits.

appeal is pending on a prior Graves Act conviction or if the time to appeal has not then expired; "[h]owever, should the prior conviction be reversed on appeal subsequently, the trial court shall, on motion by a defendant pursuant to Rule 3:21-10(b)(4) or Rule 3:22-2, amend the extended-term sentence to an ordinary Graves Act sentence."  State of New Jersey v. Haliski, 140 N.J. 1, 20 (1995).  Thus, should Petitioner obtain a reversal of any of the allegedly illegal convictions, New Jersey provides a remedy for correction of his sentence.  Petitioner is not entitled to relief on this claim.

## IV.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right.  No certificate of appealability shall issue.

### V.   CONCLUSION

For the reasons set forth above, the Petition must be denied.  An appropriate order follows.

_____
Garrett E. Brown, Jr.
Chief Judge
United States District Court

Dated: June 21, 2006

27